# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARMAYNE KIRKLAND,<br><br>*Plaintiff*,<br><br>v.<br><br>KIRSTJEN NIELSEN, Secretary of the Department of Homeland Security,<br><br>*Defendant*. | Civil Action No. 13-194 (RDM) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Charmayne Kirkland's motion for partial summary judgment. Although Kirkland, a former employee of Defendant Department of Homeland Security, has asserted race, sex, age, and disability discrimination claims against the Department, *see* Dkt. 53 (Third Am. Compl.), the present motion is much narrower: Kirkland seeks partial summary judgment only as to her claims arising out of the Department's alleged failure to accommodate her disabilities pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. A plaintiff seeking summary judgment in a discrimination case, however, faces a difficult task: She must show that, construing all "evidence in the light most favorable to" her former employer, "no reasonable jury could reach a verdict in [the Defendant's] favor." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). Because the record reveals several genuine disputes of material fact, the Court will deny Plaintiff's motion for partial summary judgment.

# I. BACKGROUND

Plaintiff Charmayne Kirkland began employment with the federal government in 1996, first with the Department of Justice's Immigration and Naturalization Service ("INS"), Dkt. 57-1 at 1 (SUMF ¶ 2), later with the Department of Homeland Security's Immigration and Customs Enforcement ("ICE"), *id*. (SUMF ¶ 4) and then with Customs and Border Protection ("CBP"), *id*. (SUMF ¶ 5). She holds a bachelor's degree in microbiology, *id*. at (SUMF ¶ 1), and spent most of her time in federal service as an industrial hygienist. In the present motion, Kirkland contends that the Department of Homeland Security ("Department") failed to accommodate two sets of disabilities: (1) her carpal tunnel syndrome and (2) her degenerative joint disease and plantar fasciitis. The following facts are undisputed except where noted.

In January 2005, Kirkland faxed her then-second level supervisor Gary McMahen a note indicating that she had been diagnosed with moderate to severe bilateral carpal tunnel syndrome. *Id.* at 11 (SUMF ¶ 47). The note, provided by Kirkland's physician, suggested that the Department provide Kirkland voice-activated word processing software and install an ergonomically correct workstation. *Id.* (SUMF ¶ 49). Kirkland sent an additional note to McMahen on February 2, 2005, reiterating both requests. *Id.* at 12 (SUMF ¶ 52).

Although Kirkland had been assigned to CBP since 2004, she had used office space provided by ICE. *See* Dkt. 57-6 at 69. On March 3, 2005, McMahen directed Kirkland to move from ICE to CBP's offices at the Ronald Reagan Building. Dkt. 57-1 at 13 (SUMF ¶ 57). That same day, Linda Church, president of Kirkland's union, sent an email to McMahen indicating that Kirkland required assistance to pack, lift, and move her office materials given her medical condition. *Id.* (SUMF ¶ 58); *see also* Dkt. 57-6 at 4. Although the parties dispute who coordinated that move, they agree that the Department did assist Kirkland in packing and moving

her boxes. Kirkland alleges, however, that, the Department did not assist her in unpacking the boxes, and, as a result, her "items remained packed in the unopen boxes for months." Dkt. 57-1 at 14 (SUMF ¶ 62). Although the Department disputes the "materiality" of that assertion, Dkt. 60 at 23 (Response to SUMF ¶ 62), the parties appear to agree that no one, in fact, assisted Kirkland in unpacking her boxes.

The parties further dispute when—and to what extent—the Department took steps to provide Kirkland with her requested voice-activated software and ergonomic workstation. Although the parties agree that "Plaintiff received voice-activated word-processing software . . . on or about July 1, 2005," Dkt. 57-1 at 17 (SUMF ¶ 78), they dispute the extent to which the Department promptly provided training for the software, *compare, e.g.*, *id.* (SUMF ¶ 79) ("DNS training was not completely provided when the software was" installed) and *id.* at 22 (SUMF ¶ 102) ("As of June 29, 2007, the Plaintiff had still not completed the . . . software training."), *with* Dkt. 60 at 25 (Response to SUMF ¶ 79) ("Plaintiff's own emails from July of 2005 indicate that CBP provided at least one demonstration of the use of the voice-activated software no later than July 28, 2005.").

There is agreement that, at least by August 2005, the Department's Equal Employment Opportunity Officer, Adline Tatum, had begun an interactive process with Kirkland to determine and to implement reasonable accommodations. Dkt. 57-1 at 16–17 (SUMF ¶ 76), Dkt. 60 at 24 (Response to SUMF ¶ 76). In November 2005, however, Mic McKeighan, the Department's Deputy Director of the Occupational Safety and Health Division, informed Kirkland that, "[i]n accordance with the Rehabilitation Act and based on a review and consideration of your physician's assessment, we do not believe that you have an impairment that substantially limits a major life activity and[,] therefore, you do not meet the definition of a qualified individual with a

disability. Therefore, no further accommodation is required." Dkt. 57-1 at 20 (SUMF ¶ 92). The Department, nevertheless, undertook an ergonomic assessment at least in December 2005, *id.* at 21 (SUMF ¶ 96), and the evaluation recommended that "Kirkland receive, *inter alia*, a trackball mouse to promote finger cursor control, as opposed to a standard mouse that contributed to reported shoulder discomfort," *id.* (SUMF ¶ 99).

According to Kirkland, she was also suffering from degenerative joint disease and plantar fasciitis during this same period, having been diagnosed with both conditions in 2004. *Id.* at 3 (SUMF ¶ 7). These conditions "severely restricted [her] ability to walk more than one quarter of a mile, ascend or descend more than three ten-inch steps, or climb or descend ladders, hills or slopes without experiencing physical pain or risking injury." *Id.* (SUMF ¶ 8).

In 2006, CBP informed Kirkland that it had decided to reassign her from her position in the District of Columbia to a position at the CBP office in Indianapolis, Indiana. *Id.* at 5 (SUMF ¶ 18); *see also* Dkt. 57-6 at 37 (Reassignment Ltr.). The letter explained that the move was required so that the CBP industrial hygienists would "be physically located in the same office," thereby facilitating their ability to consult with one another on "emergency situations and highly sensitive issues" and to "interact with [their] supervisors and other national safety program managers." *Id.* After researching her commute to the CBP branch office, however, Kirkland concluded that the only public transportation available would drop her off "across a busy interstate highway," Dkt. 57-1 at 5–6 (SUMF ¶ 23), and that, as an employee who "walks with the aid of a walker," she would have "had to somehow traverse . . . three entrances to highway I-465 as well as from north to south across [a busy intersection]—all without the benefit of traffic lights—to get to and from the . . . bus stop and the [CBP] office each day." *Id.* at 6 (SUMF ¶ 24). In light of this problem, Kirkland requested that, "as an accommodation, she be allowed to

4

continue to perform the duties of her Industrial Hygienist position from Washington, DC or, in the alternative, to work a full-time telework schedule." *Id.* (SUMF ¶ 27).

Although the precise details of CBP's rejection of the proposed accommodations are unclear, *see infra*, Section II.A., the agency ultimately agreed that Kirkland had a "physical impairment that substantially limit[ed] [her] ability to perform the major life activities of walking, standing, climbing, sitting, and lifting" but determined that "there [was] no reasonable accommodation available that would allow [her] to perform the essential functions of [her] Industrial Hygienist (GS 0690-13) position at this time." Dkt. 57-5 at 29 (Feb. 2007 Offer Ltr.). CBP concluded that its "only option to reasonably accommodate [Kirkland's] disability [was] to reassign [her] to a vacant-funded position," *id.*, and it accordingly offered Kirkland a position as a "Management Program Specialist," a GS-11 position based in the District of Columbia, which she accepted effective March 4, 2007. Dkt. 57-1 at 10 (SUMF ¶ 41). CBP later terminated Kirkland in 2008, although that termination is not at issue here.

Kirkland filed suit in 2013, alleging race, gender, disability, and age discrimination claims against the Department, *see* Dkt. 1 (Compl.), and, following discovery, she filed a third amended complaint in April 2018. *See* Dkt. 53 (Third Am. Compl.). In May 2018, this Court set a briefing schedule for cross-motions for summary judgment to be completed by October 2018, *see* Minute Order (May 4, 2018), and Kirkland filed the instant motion, seeking partial summary judgment on her claims of disability discrimination only, *see* Dkt. 57.

The Court has granted numerous, lengthy extensions of time over the course of this litigation, both before and after counsel filed the pending motion. As a result of the most recent extensions, the cross-motions are not yet fully briefed. After granting yet another extension on January 31, 2019, the Court advised all parties that the Court "intend[ed] promptly to resolve

5

Plaintiff's long-pending [and fully briefed] motion for partial summary judgment, Dkt. 57, and [would] do so on the basis of whatever papers are before the Court." *See* Minute Order (Jan. 31, 2019). The Court cautioned that, "[i]n the event that the Court decides Plaintiff's motion for partial summary judgment before briefing is complete on Defendant's cross-motion, the Court will, if necessary, reserve disposition on any additional issues raised in Defendant's cross-motion." *Id.* Because briefing on the Department's cross-motion is still not complete—now three months later—the Court will consider only those issues raised by Kirkland's motion and reserves judgment on the Department's cross-motion. For the reasons explained below, the Court will deny Kirkland's motion for partial summary judgment.

## II. ANALYSIS

Kirkland moves for partial summary judgment on "several disability discrimination and failure to accommodate claims." Dkt. 57. To prevail on that motion, she must demonstrate "that there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation, *see Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party, s*ee Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 247–48; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). "The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider 'other materials in the record.'" *Smith v. Lynch*, 106 F. Supp. 3d 20, 37 (D.D.C. 2015) (quoting Fed. R. Civ. P.

6

56(c)(3)). In deciding a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006).

Kirkland seeks summary judgment on Counts II, VII, VIII, IX, X, and XI of her third amended complaint—all six of which allege "failure[s] to grant request[s] for reasonable accommodation[s]" under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. *See* Dkt. 53 at 32, 52, 57, 58, 61, 62; *accord* Dkt. 57 at 1. The Rehabilitation Act "directs courts to employ the standards of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*," *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014). To prevail on her failure to accommodate claim, Kirkland must show that:

> [1] she was disabled within the meaning of the Rehabilitation Act; [2] her employer had notice of her disability; [3] she was able to perform the essential functions of her job with or without reasonable accommodation; and [4] her employer denied her request for a reasonable accommodation of that disability.

*Id.* at 9 (internal citations omitted).

In evaluating Kirkland's claims, "at the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts—these are jury functions, not those of a judge ruling on a motion for summary judgment." *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). As the moving party, Kirkland must demonstrate that, "viewing the evidence in the light most favorable to the [agency] and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in [the agency's] favor." *Wheeler*, 812 F.3d at 1113.

As explained below, Kirkland has failed to satisfy this demanding burden and, thus, is not entitled to summary judgment on any of the claims currently at issue.

7

A.  **Carpal Tunnel Syndrome**

Kirkland first seeks summary judgment on four counts stemming from her requests that the Department reasonably accommodate her carpal tunnel syndrome ("CTS"). *See* Dkt. 57 at 1; *see also* Dkt. 53 at 32, 58, 61, 62. Specifically, she contends that the Department failed adequately to accommodate her disability in three ways:[1] First, by not promptly providing her with voice-assisted software and related training, Dkt. 57-2 at 38–41; second, by not promptly installing an ergonomic workstation and related equipment, *id*. at 42–43; and, third, by not assisting her in unpacking boxes after she moved offices, *id.* at 43–44. In its opposition brief, the Department does not address Kirkland's argument regarding whether she was disabled at the time of the accommodations request; instead it principally argues that CBP reasonably accommodated all of Kirkland's requests. *See* Dkt. 60 at 5. The Court will, accordingly, focus on that prong of the failure-to-accommodate analysis.[2]

---

[1] Although focusing on three incidents, Kirkland seeks summary judgment on four counts relating to her CTS. One of those counts, however—Count IX—relates exclusively to CBP's alleged "fail[ure] to engage in the interactive process with Ms. Kirkland" by "failing to correctly interpret the legal standard for requiring an employer to complete an individualized assessment of whether a person with CTS is an individual with a qualified disability under the ADA." Dkt. 53 at 60 (Third Am. Compl. ¶ 389).

Kirkland is correct that "[i]n order to determine the appropriate reasonable accommodation, the employer may need to 'initiate an informal, interactive process' . . . which . . . 'should identify . . . potential reasonable accommodations.'" *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 57 (D.D.C. 2012) (quoting 29 C.F.R. § 1630.2(o)(3)). Although "the absence of good faith" in the interactive process "can serve as evidence of an ADA [or Rehabilitation Act] violation," *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005), however, "[t]here is no independent cause of action for failure to engage in the interactive process—under the ADA, and in turn, the Rehabilitation Act, there is only a cause of action for failure to accommodate generally." *Doak v. Johnson*, 19 F. Supp. 3d 259, 278 n. 20 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015). Although the substance of this count may be relevant to Kirkland's other claims, the Court, accordingly, will deny summary judgment on Count IX.

[2] If Kirkland cannot establish that she had a disability within the meaning of the Rehabilitation Act, her employer had "no obligation to provide *any* accommodation[,] and [Kirkland] has no

1. *Voice-Activated Typing Software*

Kirkland first seeks summary judgment with respect to the Department's "delay in providing voice-activated typing software." Dkt. 57-2 at 38. In seeking summary judgment on this claim, Kirkland's task is difficult; she acknowledges that any "issues related to software and a headset were ultimately accommodated," and thus the only question is one of timing. *Id.* Accordingly, to prevail, she must demonstrate that because the Department took a "prolonged time, without justification" to provide the appropriate software, *id.* at 41, it acted unreasonably as a matter of law. As the D.C. Circuit has explained, "there are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable under the ADA [or Rehabilitation Act].'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007)). In determining whether a particular delay is reasonable, the inquiry hinges on factors such as "the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262–63 (10th Cir. 2001). As a result, it is possible to pursue a claim premised on delay alone. But, to prevail at this stage of the proceeding, Kirkland must show that, considering all of these factors "in the light most favorable to the [Department] and drawing all reasonable inferences

---

claim for relief under the Rehabilitation Act." *Smith*, 106 F. Supp. at 44 (emphasis added). The Court notes that all events in this litigation occurred before the passage of the ADA Amendments Act of 2008 ("ADAAA"), and that, "[p]rior to the [ADAAA's] passage, many courts had found that carpal tunnel syndrome did not constitute a 'disability' under the ADA." *Martin v. District of Columbia*, 78 F. Supp. 3d 279, 298 n.20 (D.D.C. 2015); *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 202 (2002) (holding that a plaintiff with CTS who could "still brush her teeth, wash her face, bathe, tend her flower garden, fix breakfast, do laundry, and pick up around the house" could not "establish a manual task disability as a matter of law."). For present purposes, the Court need not, and will not, decide this issue.

accordingly, no reasonable jury could" find that the delay here was reasonable. *Wheeler*, 812 F.3d at 1113. She has not done so.

Kirkland argues that CBP took "six months" to procure the software and a headset necessary for voice-activated typing and that "the training required to operate the software was never completed." Dkt. 57-2 at 39. She attests that she first requested voice-assisted software in January 2005, Dkt. 57-1 at 11 (SUMF ¶ 49), and again on February 2, 2005, *id.* at 12 (SUMF ¶ 52), and that she received it "on or about July 1, 2005," *id.* at 17 (SUMF ¶ 78). But even assuming, *arguendo*, that a six-month delay of this sort could qualify as "unreasonable" under the Rehabilitation Act, there is a genuine dispute regarding why the delay occurred. The Department argues that Kirkland "was out sick for all of February" and that, "during much of March and April, both [she] and management were consumed with moving" her from her previous office location to a new building. Dkt. 60 at 6. The Department contends, moreover, that Kirkland's "assertion that training was never provided is completely false and at the very least in dispute," *id.*, and it points to an interrogatory response from her supervisor, Mic McKeighan, attesting that he made multiple attempts to reach Kirkland to complete the training and that she could have scheduled additional training herself. *See* Dkt. 57-6 at 80–81.

In response, Kirkland argues that the office move should not have occupied so much of her supervisors' time. She also contends that there is evidence that she was "out of the office for weeks," but disputes that there is evidence that she was "gone the entire month of February." Dkt. 67 at 2 (citing Dkt. 57-6 at 4). Finally, Kirkland does not respond directly to McKeighan's contentions regarding his offers of training but, instead, clarifies that she does not dispute that *some* training was provided, but, instead, contends that it was never completed. *Id.* at 3. Given these differing accounts of the length of Kirkland's absences, the attempts of management to

10

schedule the training, and Kirkland's own opportunities to seek training herself, the Court concludes that Kirkland has not shown that she is entitled to summary judgment on her claim that the Department unreasonably delayed in making the voice-activated software available to her.

The Court will, accordingly, deny Kirkland's motion for summary judgment on Count XI.

    2.    *Ergonomic Workstation*

The same goes for Kirkland's claims of delay with regard to receiving an ergonomic workstation. Kirkland alleges that the Department "did not order a workstation ergonomic assessment for months" after her request and that it failed to conduct an "ergonomic assessment of [her] workstation [until] nearly one year after she requested a reasonable accommodation." *Id*. The problem is that the Department flatly denies this account; Kirkland made her initial request for an ergonomic workstation in *February 2, 2005*, Dkt. 57-1 at 12 (SUMF ¶ 52) (emphasis added), and the Department maintains that "[a]n ergonomic assessment was conducted by an entity named Ergonetics in *May 2005* and another by a federal agency in December 2005," Dkt. 60 at 7 (emphasis added). That contention, moreover, is backed up with a copy of an ergonomic assessment from December and an affidavit from her supervisor, Mic McKeighan, attesting that an assessment was also conducted in May. *See* Dkt. 57-6 at 46; 80. Regardless of whether the delay Kirkland alleges would, if accurate, suffice to establish a claim for unreasonable delay—and the Court expresses no view on that question—this conflicting evidence about when the requested assessments occurred precludes the entry of summary judgment in Kirkland's favor. The Court must, accordingly deny summary judgment with respect to Kirkland's motion for summary judgment on Count II.

### 3. *Assistance in Unpacking Boxes*

This leaves Count X, which alleges that the Department violated the Rehabilitation Act "[b]y failing to help Plaintiff unpack her boxes following a move to the Ronald Reagan Building in 2005." Dkt. 53 at 61 (Third Am. Compl. ¶ 392). Kirkland contends that, "[d]espite knowing about [her] CTS, [her then second-level supervisor, Gary] McMahen arranged for a moving company to pick up Plaintiff's items . . . but not to unpack them." Dkt. 57-2 at 43. There is evidence in the record, however, that McMahen was no longer Kirkland's supervisor once she completed the move. *See* Dkt. 57-6 at 4 ("I spoke with Charmayne today and she advised me that she has been directed to move to the RRB next Wednesday and that you would no longer be her direct supervisor."). The Department notes, moreover, that "Mr. McMahen dispute[s] that he was aware" that Kirkland required assistance unpacking the boxes after she moved. Dkt. 60 at 7. Kirkland appears to acknowledge that a dispute about McMahen's knowledge exists: she asserts that, "[w]hile Gary McMahen denies knowing that . . . Kirkland needed help to unpack her boxes, another member of management specifically confirmed Ms. Kirkland's assertions that McMahen certainly knew." Dkt. 67 at 3. Accepting Kirkland's own characterization of the record, she is not entitled to summary judgment. It is her burden to show that "that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and, in the face of a factual dispute like this one, it is the role of the jury—not the Court—to weigh the evidence and to assess the credibility of the witnesses. *See Wheeler*, 812 F.3d at 1113.

The Court, accordingly, will deny Kirkland's motion for summary judgment on Count X.

### B. Degenerative Joint Disease and Plantar Fasciitis

Plaintiff also seeks summary judgment on two counts arising out of CBP's alleged failure to accommodate her degenerative joint disease and plantar fasciitis, Counts VII and VIII.

Kirkland was diagnosed with both conditions in 2004, "severely restrict[ing] [her] ability to walk more than one quarter of a mile, ascend or descend more than three ten-inch steps, or climb or descend ladders, hills or slopes without experiencing physical pain or risking injury." Dkt. 57-1 at 3 (SUMF ¶ 8). After being told that she had been reassigned from her position in Washington, DC to a position in Indianapolis, Indiana, Kirkland requested an accommodation of either (1) relocating her work to continue in D.C. or (2) permission to telework full-time. *Id.* at 6 (SUMF ¶ 27). CBP denied both requested accommodations and ultimately concluded that no reasonable accommodation would enable Kirkland to perform the essential functions of an industrial hygienist. CBP then offered Kirkland a lower-paying position as a management program specialist, which Kirkland accepted.

Kirkland argues that CPB's refusal to honor her requests for relocation or telework violated the Rehabilitation Act by denying her a reasonable accommodation.[3] As discussed, to prevail on such a claim, Kirkland must show that "[1] she was disabled within the meaning of the Rehabilitation Act; [2] her employer had notice of her disability; [3] she was able to perform the essential functions of her job with or without reasonable accommodation; and [4] her employer

---

[3] Kirkland asserts two counts related to this disability. The second of these counts, Count VIII, is styled as "failure to grant request for reasonable accommodation" and consists of the allegation that "[b]y failing to promptly place Plaintiff in a vacant-funded position and causing her to be without income for several months in 2006 and 2007, Defendant excluded Plaintiff from participation in, denied her the benefit of, and subjected her to discrimination in Federal employment, in violation of the . . . Rehabilitation Act." Dkt. 53 at 57–58 (Third Am. Compl. ¶ 373).

In her brief, Kirkland argues that "the reassignment represented an act of disability discrimination . . . because the Agency's stated reason for reassigning . . . Kirkland was her disability DJD . . . and plantar fasciitis, and because the reassignment was unnecessary as the Defendant could have accommodated . . . Kirkland in her existing job." *See* Dkt. 57-2 at 25–26. Count VIII, accordingly, is dependent on the allegation that Kirkland could not perform the essential functions of the industrial hygienist position. Because, as explained below, that question is in dispute, the Court will deny summary judgment to Count VIII as well.

13

denied her request for a reasonable accommodation of that disability." *Solomon*, 763 F.3d at 9. The first two elements are not disputed for present purposes; instead, the Department opposes Kirkland's motion solely on the ground that it lawfully concluded she was unable to perform the essential functions of the industrial hygienist position, either with or without an accommodation. Because there is a dispute of material fact regarding whether Kirkland could perform the essential functions of the position, the Court concludes she is not entitled to summary judgment.

CBP allegedly presented Kirkland with its decision to deny her request for the proposed accommodations and, instead, offered her a lower-paying position in a November 8, 2006 letter from McKeighan. Dkt. 57-1 at 7 (SUMF ¶ 29). Kirkland represents that the letter denied both the request for relocation and the request for teleworking, and, moreover, concluded that she "could not perform what [CBP] termed essential functions, namely functions described in the updated Industrial Hygienist position . . . [such as] 'walking, standing, bending, climbing and carrying many items of equipment used in sampling,' 'frequent inspections and surveys' and other tasks requiring physical exertion." *Id.* The letter also explained, according to Kirkland, CBP's policy as to whether an accommodation constitutes an "undue hardship" for CBP, *see id.* at 11 (SUMF ¶ 46), although Kirkland states that McKeighan did not indicate that either requested accommodation would, in fact, pose an "undue hardship" for CBP, *id.* (SUMF ¶ 45). The overall thrust of Kirkland's argument is that "[m]anagement never analyzed [her] job to consider its actual purpose and essential functions. Instead, management simply updated the position description to include tasks that she could not do and was never asked to do." Dkt. 57-2 at 19 (internal citations omitted). Kirkland also contends that she could, in fact, perform the essential functions of the job and that "[m]anagement's suggestion [that she] was physically or

medically disqualified from serving as an Industrial Hygienist"—a position Kirkland was already performing—"is inaccurate and completely unsupported." *Id.* at 17.

Although Kirkland might ultimately prevail on this claim—and the Court, once again, expresses no view on that question—she has not carried "the heavy burden of establishing that the merits of [her] case are so clear that expedited action is justified" in the form of summary judgment. *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). Indeed, it is not even clear that Kirkland has carried her initial burden of "identifying those portions" of the record that support her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the Department correctly observes, the November 8, 2006 letter—referenced seven times in Kirkland's statement of undisputed material facts—is not in the materials Kirkland has filed with the Court and referenced in her statement of undisputed material facts. Although Kirkland identifies the November 8, 2006 letter as "Exhibit B," Dkt. 57-1 at 3 (SUMF ¶ 7), the only letter to her from CBP contained in that exhibit is a two-page letter—from February 2007, not November 2006, *see* Dkt. 60 at 17 (Response to SUMF ¶ 7) ("[T]he cited supporting documentation does not appear in Exhibit B, as asserted. The only letter from Mickey D. McKeighan to Plaintiff included in Exhibit B is dated February 16, 2007."). But, even if Kirkland has simply misidentified the relevant letter, and even if CBP did send the letter that Kirkland posits, she has failed to demonstrate that she is entitled to summary judgment.

Kirkland argues that, when she accepted the industrial hygienist position in 1996, the "physical demands ('Factor 8' of the position description) . . . had been expressly defined by INS as 'primarily sedentary in nature'" and that, only later, did CBP update the position description (inaccurately, in her view) to require "moderate physical exertion, including walking, standing, bending, climbing and carrying many items of equipment used in sampling." Dkt. 57-1 at 4

15

(SUMF ¶ 14). The Court cannot conclude, however, that a reasonable jury would inevitably adopt Kirkland's view of the essential job requirements. The exhibit that Kirkland cites for the proposition that her 1996 position was "primarily sedentary in nature," for example, is missing the page that contains "Factor 8," and it is that factor that presumably spoke to the physical demands of the job. *See* Dkt. 57-6 at 21–22 (skipping from Factor 4 to Factor 9). The Department also contends that the 1996 description, in fact, said that "[t]he inspections and surveys require moderate physical exertion, including walking, standing and carrying many items of equipment used in sampling," Dkt. 60 at 18 (Response to SUMF ¶ 14)—although, like Kirkland, the Department has failed to provide the Court with a complete copy of the 1996 job description. Moreover, although the 1996 job description may be relevant, the job description in effect at the time she sought the accommodation is also probative. The parties also dispute whether the testimony of Kirkland's coworkers accurately describe the essential functions of the position. *Compare, e.g.*, Dkt. 57-1 at 7 (SUMF ¶ 31) ("The Defendant never required [Kirkland] and rarely required any of the other three Industrial Hygienists to physically perform inspections or surveys or to walk, stand, bend, climb or carry equipment in the course of their official duties." (citing Jim Britt Dep.)), *with* Dkt. 60 at 19 (Response to SUMF ¶ 31) ("[I]n response to whether Defendant required Plaintiff to perform activities involving 'even moderately strenuous physical labor' in the course of her job duties, Britt clearly stated 'Not to my knowledge, but, really, that wouldn't—I wouldn't probably know that if it happened, so—not to my knowledge, no.'"). It is the role of the jury, and not the Court, to weigh the conflicting evidence regarding the essential requirements of the job. *See Wheeler*, 812 F.3d at 1113; *Baker v. Potter*, 294 F. Supp. 2d 33, 44 (D.D.C. 2003).

The Court, accordingly, cannot conclude that Kirkland has shown the absence of a genuine dispute as to her ability to perform the essential functions of the industrial hygienist position. Because she cannot prevail on summary judgment without satisfying this element of her claim, *see Doak v. Johnson*, 798 F.3d 1096, 1107 (D.C. Cir. 2015), the Court need not address the other elements of her failure-to-accommodate claim with respect to degenerative joint disease and plantar fasciitis.

The Court will, accordingly, deny Kirkland's motion for summary judgment with respect to Counts VII and VIII.

## CONCLUSION

For the reasons explained above, Kirkland's motion for partial summary judgment, Dkt. 57, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 30, 2019